**Delores LEONARD, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GERMANTOWN SAVINGS BANK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 11, 1996.
Decided Dec. 23, 1996.

Kathy Kennedy, Philadelphia, for petitioner.

Stephen J. Harlen, Philadelphia, for respondent.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Delores Leonard (Claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a decision of a Workers' Compensation Judge (WCJ) which denied Claimant's penalty petition.

On November 7, 1986, Claimant sustained a shoulder injury during the course of her employment with Germantown Savings Bank (Employer). Thereafter, Claimant received $194.73 per week in workers' compensation benefits pursuant to a notice of compensation payable.

On March 14, 1990, Employer filed a review petition alleging that, as of November 3, 1989, Claimant's medical treatment was unreasonable, unnecessary, and unrelated to Claimant's work injury. Thereafter, on June 21, 1991, Employer filed a suspension petition alleging that, as of November 8, 1990, Claimant had recovered from her work-related injury to the extent that she could return to work at an available position within her physical restrictions and that Claimant failed to make a good faith effort to follow-up on job referrals. Claimant then filed a petition for penalties on July 8, 1991, alleging that Employer's insurance carrier failed to pay Claimant's medical bills.

The three petitions were then consolidated. After a series of hearings, the WCJ made the following pertinent findings of fact:

8. Dr. Iannotti [Employer's medical expert who twice examined Claimant] opined, within a reasonable degree of medical certainty, that Claimant could return to work, albeit, in a sedentary or light duty position. . . .

9. Based upon this opinion, Dr. Iannotti reviewed and approved the sedentary positions which were presented to him by the rehabilitation counselor Sherry Kristal–Turetsky. He opined that these jobs would not exacerbate Claimant's condition. . . .

11. In further support of its Petitions, [Employer] submitted the testimony of Sherry Kristal–Turetsky, M.Ed., a Certified Rehabilitation Counselor, who was assigned by [Employer's] insurance carrier to assist Claimant in finding light duty work on September 24, 1990. . . .

12. Ms. Kristal–Turetsky testified that she attempted to contact Claimant through her attorney, both by letter and telephone, in order to arrange an interview. However, she never received a response. . . .

13. Ms. Kristal–Turetsky testified that she managed to determine suitable positions for Claimant by contacting her pre-injury employer and did on-site job analysis. She reviewed Claimant's employment application and medical reports. In partic-

ular, she followed the estimated functional capacities form completed by Dr. Iannotti. . . .

14. Ms. Kristal–Turetsky found three sedentary positions (i.e. lifting up to ten pounds with occasional bending and squatting) for Claimant with her pre-injury employer. These three job possibilities were bank reconciliation clerk, credit investigator and teleservice representative. . . .

15. Ms. Kristal–Turetsky testified that Claimant never returned to work to any of these jobs. . . . In fact, Claimant responded that she was unable to return to work due to her disabling work injury. . . .

17. Mr. Molnar [Employer's Assistant Vice President of Human Resources] testified that, upon notice from the insurance carrier that Claimant was able to return to work, he assisted Ms. Kristal–Turetsky in locating and evaluating positions at [Employer] that would be suitable for Claimant. . . .

18. Mr. Molnar testified that he informed Claimant in a letter dated November 8, 1990, that there were three sedentary positions available (reconciliation clerk, credit investigator and teleservice representative) at [Employer] that matched Claimant's vocational background and were within her medical restrictions. . . .

19. In opposition to [Employer's] Petitions, Claimant testified in her own behalf twice. . . .

22. In further opposition to [Employer's] Petition, Claimant submitted the testimony of her treating physician, John J. Bowden, Jr., D.O., a board eligible general practitioner, who first examined Claimant on September 15, 1987. . . .

25. Dr. Bowden opined that Claimant's condition was related to her work injury. . . .

26. Dr. Bowden opined that, since she is totally disabled (by her condition and by the medication needed for pain relief and muscle relaxation), Claimant cannot return to work, whether it be to her pre-injury employment or any other type of job. . . .

27. Dr. Bowden further opined that Claimant's injury was 'permanent' and he offered a prognosis of 'poor.' . . .

(WCJ's Decision at 3–6, Findings of Fact (F.F.) No. 8–9, 11–16, 18–19, 22, 25–27.) (Citations omitted.)

The WCJ accepted the testimony of Dr. Iannotti, Ms. Kristal–Turetsky, and Mr. Molnar as credible and rejected the testimony of Claimant, stating:

The testimony of Claimant is found to be neither credible nor persuasive, and, accordingly, it is rejected. Claimant's (and her attorney's) stonewalling of the vocational process (i.e. the interview) and her refusal to try these light duty tasks tell a tale of 'bad faith' on Claimant's part. Accordingly, modification should be granted.

(WCJ's decision at 7, F.F. No. 30(d).)

The WCJ concluded that Employer met its burden of proving that work was available to Claimant within her medical restrictions effective November 8, 1990. Hence, by a decision and order circulated on December 12, 1994, the WCJ granted Employer's suspension petition, modifying Claimant's benefits to $97.11 retroactive to November 8, 1990.

Significantly, the WCJ also concluded that "[a]ll medical treatment and services provided by Dr. Bowden and other medical providers, on or after November 3, 1989, are unreasonable and unnecessary for treating the continuing residual disability of Claimant." (WCJ's decision at 7, Conclusion of Law (C.L.) No. 3.) Thus, the WCJ granted Employer's review petition effective November 3, 1989.

Finally, the WCJ concluded that "[w]hile [Employer] is responsible for medical services provided before November 3, 1989, this [WCJ] will impose no penalty for services which Dr. Iannotti finds to be 'inappropriate,'" (WCJ's decision at 7, C.L. No. 4.), and, therefore, denied Claimant's penalty petition.

Claimant appealed to the Board which affirmed. The instant appeal followed.

Claimant presents two issues for our review: (1) Whether the WCJ erred in terminating Employer's obligation to pay Claimant's medical bills effective November 3, 1989, rather than December 12, 1994, the

date on which the WCJ's decision was circulated; and (2) Whether the WCJ erred in dismissing Claimant's penalty petition.

*Medical Bills*

██ Under the Workers' Compensation Act,[1] an employer is only liable for payment of benefits, both compensation and medical, arising out of work-related injuries. *Mulholland v. Workmen's Compensation Appeal Board (Bechtel Construction),* 669 A.2d 465 (Pa.Cmwlth.1995). For this reason, Pennsylvania courts have held that where an employer challenges the reasonableness and necessity of a claimant's work-related medical bills, the employer must pay those bills up until the date of the WCJ's decision to terminate benefits. *See, e.g., Loose v. Workmen's Compensation Appeal Board (John H. Smith Arco Station),* 144 Pa.Cmwlth.332, 601 A.2d 491 (1991). Conversely, if an employer concludes that a claimant's medical bills were caused by a non-work injury and the employer therefore unilaterally ceases to pay such bills, the employer will not be assessed a penalty as long as a WCJ subsequently determines that these medical bills were not in fact caused by the **work-related** injury. *See, e.g., Mulholland; Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Company),* 659 A.2d 45 (Pa.Cmwlth. 1995).

██ In the instant case, Employer has never contended that the medical bills incurred by Claimant during the time period of November 3, 1989 to December 12, 1994 were not work-related. Rather, Employer has consistently argued that such bills were unreasonable and unnecessary. Further, with respect to the subject bills, the WCJ only concluded that "[a]ll medical treatment and services ..., on or after November 3, 1989, are unreasonable and unnecessary." (WCJ's decision at 7, C.L. No. 3.) Accordingly, it is clear that Employer is liable for the subject medical expenses incurred up to the date on which the WCJ circulated his decision.

██ Although Employer actually admits in its appellate brief that the WCJ did in fact err in terminating Claimant's medical bene-

fits effective November 3, 1989, Employer contends that this error was harmless and a remand today would be meaningless because Employer **has already paid** the subject medical bills.

After a careful review of the record, we conclude that it is unclear whether or not Employer has paid Claimant's work-related medical expenses through December 12, 1994. We, therefore, reverse the Board's decision insofar as it affirms the WCJ's order terminating Employer's obligation to pay Claimant's medical expenses effective November 3, 1989, and we remand this matter to the WCJ to determine Employer's liability for any of Claimant's outstanding work-related unpaid medical bills incurred prior to December 12, 1994.

*Penalty Petition*

██ Claimant also contends that the Board erred in upholding the WCJ's dismissal of her penalty petition. Section 435(d) of the Act, 77 P.S. § 991(d), states in pertinent part:

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers *may be penalized* a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to twenty per centum in cases of unreasonable or excessive delays. Such penalty shall be payable to the same persons to whom the compensation is payable. (Emphasis added.)

Under Section 435 of the Act, the finding of a violation of the Act does not mandate the automatic imposition of a penalty, but rather, the WCJ, the Board and the Court all have discretion in determining whether to impose penalties. *Dworek v. Workmen's Compensation Appeal Board (Ragnar Benson, Inc. & National Union Fire Insurance Co.),* 166

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

Pa.Cmwlth. 512, 646 A.2d 713 (1994).[2] In this case, the WCJ, exercising the discretion conferred upon him under Section 435, declined to assess penalties against Employer on the grounds that, first, the medical expenses incurred after November 3, 1989 were unnecessary and unreasonable, and second, that Claimant (and her attorney) acted in bad faith throughout the proceedings by "stonewalling ... the vocational process (i.e. the interview) and ... refus[ing] to try these light duty tasks." (WCJ's decision at 7, F.F. No. 30(d).)

In light of Claimant's bad faith refusal regarding the job referrals, we cannot say that the WCJ abused his discretion in declining to impose penalties.[3]

Order of the Board reversed insofar as it affirms the WCJ's order terminating Employer's obligation to pay Claimant's medical expenses effective November 3, 1989 and the matter is remanded to the Board to determine Employer's liability for any of Claimant's outstanding work-related unpaid medical bills incurred prior to December 12, 1994.

Jurisdiction relinquished.

### ORDER

AND NOW, December 23, 1996, the order of the Workmen's Compensation Appeal Board is the above-captioned matter is hereby reversed insofar as it affirmed the Workers' Compensation Judge's decision terminating Germantown Savings Bank's obligation to pay Delores Leonard's medical expenses effective November 3, 1989. We remand this matter to the Board to determine whether Germantown Savings Bank has paid Leon-

ard's work-related medical bills incurred prior to December 12, 1994.

In all other respects the order of the Board is affirmed.

Jurisdiction relinquished.

---

**2.** In *Graves v. Workmen's Compensation Appeal Board (LaFrance Corporation and The Travelers Insurance Co.)*, 680 A.2d 49, 52 n. 4 (Pa.Cmwlth. 1996), we explained that

Section 435(d) specifically provides that '[t]he department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure....' 77 P.S. § 991(d). Accordingly, ... the language of Section 435(d) clearly grants this Court discretion to assess penalties against an employer or insurer for violating the Act, independent of a WCJ's or

the Board's decision to grant or deny such penalties. (Emphasis deleted.)

**3.** We recognize that had the WCJ's decision to deny penalties been predicated only upon his finding that the unpaid work-related medical bills were *unreasonable and unnecessary*, then we would have been constrained to conclude that the WCJ abused his discretion. *See, e.g., Loose* (holding that a WCJ abused his discretion in declining to impose Section 435 penalties against an employer who unilaterally ceased payment of work-related medical bills on the sole basis that the bills were unreasonable and unnecessary).